FENNEMORE

**FENNEMORE CRAIG, P.C.**
Patrick Keery (No. 030971)
2394 E. Camelback Rd., Suite 600
Phoenix, Arizona 85016-9077
Telephone: (602) 916-5000
Email: pkeery@fennemorelaw.com
*Proposed Attorneys for Debtor*

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| In re<br><br>**CORE LANDSCAPE, LLC,**<br><br>Debtor. | Chapter 11 Proceedings<br><br>[Subchapter V]<br><br>Case No. 2:26-bk-10380-PS<br><br>**EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS:**<br>**(I) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL;**<br>**(II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES;**<br>**(III) SCHEDULING A FINAL HEARING; AND**<br>**(IV) GRANTING RELATED RELIEF** |

Pursuant to Code §§ 105, 361, and 363, Rules 4001 and 9014, and LBR 4001-4,[1] CORE LANDSCAPE, LLC, the debtor and debtor in possession ("**Debtor**") in the above-captioned chapter 11 bankruptcy case (the "**Case**"), hereby moves the Court on an emergency basis to enter an interim order ("**Interim Order**") substantially in the form attached hereto as **Exhibit A,** (a) approving and authorizing Debtor's immediate use of cash collateral over which asserts a lien; (b) granting Debtor's pre-petition lenders adequate protection in the form of replacement liens in connection with Debtor's use of cash collateral; and (c) setting the date and time for a final hearing.

This Motion is brought on an emergency basis to ensure continuity of operations by the Debtor and to avoid irreparable harm to the bankruptcy estate in the first few weeks of this Case. Debtor seeks interim approval to use Cash Collateral in accordance with the budgets attached hereto as **Exhibits B1 and B2** ("**Budget**"), pending a final hearing. This Motion is supported by the following Memorandum of Points and Authorities and the *Declaration of Aaron Merkow in Support of First Day Motions* (the "**First Day Declaration**").

---

[1] Unless otherwise indicated, all Section and Rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532 ("**Code**"), and to the Federal Rules of Bankruptcy Procedure 1001-9037 ("**Rules**"), or the Local Bankruptcy Rules for the District of Arizona ("**LBR**").

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. STATEMENT OF FACTS

1. On October 12, 2026 (the "**Petition Date**") Debtor filed a voluntary Chapter 11 bankruptcy petition in this Court. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core matter pursuant to 28 U.S.C. § 157(b)(2).

2. The Debtor was formed on or about August 15, 2016, for the purpose of operating a business that provides landscaping and landscape maintenance services to its retail and commercial customers.

3. Debtor operates its business from its principal's residence located at 937 West Linger Lane, Phoenix, AZ 85021. Additionally, Debtor utilizes a lot at 502 East Cody Drive, Phoenix, AZ 85040 to store equipment, plant materials and supplies.

4. Debtor currently employs four (4) employees, not including, its principal, Aaron Merkow ("**Mr. Merkow**").

5. On October 13, 2026, Debtor filed a *Notice of Filing Report of Purported Secured Claims Secured Pursuant to Recorded Financing Statements* ("**Notice**")[Dkt. No. 5].[2] The Notice provided a listing of all recorded UCC-1 Financing Statements currently on file with the Ariz. Sec'y of State.

---

[2] Debtor reserves all rights, claims and defenses related to the purported security interests reflected in the

6. Pursuant to the Notice, there are a number of creditors who may claim an interest in Debtor's cash collateral, including: (i) Bayfirst National Bank ("**Bayfirst**")(pursuant to UCC-1 filed on September 27, 2023 – Rec. No. 2023-005-1813-2); (ii) Wells Fargo Vendor Financial Services ("**Wells Fargo**")(pursuant to UCC-1 filed on February 10, 2025 – Rec. No. 2025-000-5786-9); (iii) CT Corporation ("**CT**")(pursuant to UCC-1 filed on May 12, 2026 – Rec. No. 2026-001-8180-0).[3] Bayfirst, Wells Fargo and CT are referred to herein collectively as the "**Purported Secured Creditors**"). Of the Purported Secured Creditors, Debtor believes that Bayfirst has the first-priority blanket lien on all of Debtor's assets and that Bayfirst is undersecured.

7. Debtor filed this bankruptcy to restructure its obligations so as to reorganize and emerge from bankruptcy in an effort to ensure the maximum recovery for all of Debtor's creditors.

8. The Debtor has reached out to have discussions with Bayfirst in an effort to secure an agreement with Bayfirst for the consensual use of cash collateral during the interim period.

---

Notice.

[3] Debtor believes that CT Corporation is agent for Kapitus Servicing, LLC

9. Without the use of cash collateral, the Debtor will be unable to continue operations.

## II. LEGAL ARGUMENT

### A. Cash Collateral.

Debtor generates revenues from customers for the landscaping services it provides. Currently, the Debtor has approximately $106,857.81 of cash, which is held in its Wells Fargo accounts (accounts ending 0026). Without the use of cash collateral, the Debtor will be unable to fund operations.

Bayfirst and other Purported Secured Creditors may assert blanket liens on all of the Debtor's assets and Debtor's business revenues (such cash proceeds are hereinafter referred to as the "**Cash Collateral**").

### B. The Secured Creditors Are Adequately Protected.

#### a. Maintenance of Going Concern Value.

The Purported Secured Creditors are adequately protected by Debtor's continuation and preservation of the on-going concern value of the business. *See e.g., In re Erie Hilton Joint Venture*, 125 B.R. 140, 149 (Bankr. W.D. Pa. 1991)("Preservation of the going-concern value of the business can constitute a benefit to the secured creditor."); *In re Princeton Square Assocs.*, 201 B.R. 90-96 (Bankr. S.D.N.Y. 1996)("[T]his

court concludes that no monetary protection is required to be provided by the debtor in possession to the secured creditor to the extent that the rents are applied for the maintenance of the property in the manner a receiver would apply the rents."). Debtor is in the best position to operate the business. By allowing the Debtor to use cash collateral to continue to operate the business, the Secured Creditors will have a greater assurance of recovering their claims. Moreover, immediate interim approval of the use of cash collateral under Bankruptcy Rule 4001(a) is appropriate. *See In re Center Wholesale Inc*., 759 F.2d. 1440, 1449 fn. 21 (9th Cir. 1985).

**b. Grant of Replacement Liens**

To the extent that the Purported Secured Creditors demonstrate an unavoidable perfected security interest in the Cash Collateral, then such Purported Secured Creditors are entitled to adequate protection in exchange for the Debtor's use of the Cash Collateral. In this case, the Debtor proposes to provide replacement liens ("**Replacement Liens**") to the Purported Secured Creditors. The Replacement Liens will be on the same categories of assets as the pre-petition collateral and have the same priority and validity as the pre-petition lien as to which it relates, and will be capped at the value of such pre-petition collateral in which such Purported Secured Creditor had as an unavoidable perfected security interest as of the Petition Date.

**c. Adequate Protection Payment to Bayfirst**

Further, Debtor proposes to make an adequate protection payment of two thousand dollars ($2,000) per month to Bayfirst (who is the first position lienholder in Debtor's assets pursuant to a blanket lien recorded in 2023) to protect Bayfirst from potential diminution in value of Bayfirst's collateral. Debtor asserts this amount, coupled with Replacement Liens, and the going concern value of Debtor's business is sufficient.

## III. <u>RELIEF REQUESTED</u>

The Debtor requests the interim use of Cash Collateral pursuant to the Interim Budget attached hereto as <u>**Exhibit B1**</u>, subject to a fifteen percent (15%) total variance during any monthly period, during the period from October 12, 2026 through November 6, 2026 ("**Interim Period**"). Further Debtor requests the use of Cash Collateral pursuant to the Budget attached hereto as <u>**Exhibit B2**</u>, subject to a fifteen percent (15%) total variance during any monthly period, during the period after the Interim Period.

The Bankruptcy Code authorizes a debtor-in-possession to utilize another entity's cash collateral with authorization from the Bankruptcy Court, so long as the other entity's interest in the cash collateral is adequately protected. In this regard,

11 U.S.C § 363 provides as follows:

> (c)(2) The trustee may not use, sell or lease cash collateral under paragraph (I) of this subsection unless -
>
> 1. each entity that has an interest in such cash collateral consents; or
> 2. the Court, after notice and hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.
>
> (c)(3) Any hearing under paragraph (2)(b) of this subsection may be a preliminary hearing or may be consolidated with a hearing under subsection (e) of this section, but shall be scheduled in accordance with the needs of the debtor. If the hearing under Paragraph (2)(B) of this subsection is a preliminary hearing, the Court may authorize such use, sale or lease only if there is a reasonable likelihood the trustee will prevail at the final hearing under subsection (e) of this section. The court shall act promptly on any request for authorization under paragraph (2)(B) of this subsection.

. . .

> (e) Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

When adequate protection is required under §§ 362, 363, or 364 of this title, such adequate protection may be provided by:

> 1. requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under § 362 of this title, use, sale or lease under § 363 of this title, or

> any grant of a lien under § 364 of this title results in a decrease in the value of such entity's interest in such property;
>
> 2. providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or
> 3. granting such other relief other than entitling such entity to compensation allowable under § 503(b)(l) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property. 11 U.S.C. § 361.

"Adequate protection" is a concept which is decided flexibly on a case-by-case basis. *In re Martin*, 761 F.2d 472 (8th Cir. 1985). The test for whether a creditor's security interest is adequately protected is whether the creditor's interest is protected from diminution or decrease as result of the proposed use of cash collateral. *In re Carbone Companies, Inc.*, 395 B.R. 631 (Bankr. N.D. Ohio 2008); *In re Quality Beverage Co., Inc.*, 181 B.R. 887, 896 (Bankr. S.D. Tex. 1995); *In re J.K.J. Chevrolet, Inc.*, 190 B.R. 542, 545 (Bankr. E.D. Va. 1995). The primary function of providing a secured creditor with "adequate protection" is to protect its interest in cash collateral when the debtor consumes cash. *In re Mach., Inc.*, 287 B.R. 755 (Bankr. E.D. Mo. 2002).

Pursuant to 11 U.S.C. § 363, adequate protection may be provided by a replacement lien. *In re Center Wholesale, Inc.*, 759 F.2d 1440, 1450 (9th Cir. 1985); *In re*

*Swede/and Dev. Group, Inc.*, 16 F.3d 552, 564 (3d Cir. 1994); *In re O'Connor*, 808 F.2d. 1393(10th Cir. 1987); *In re Cafeteria Operators, L.P.*, 299 B.R. 400 (Bankr. N.D. Tex. 2003); *In re LTV Steel Company, Inc.*, 274 B.R. 278 (Bankr. N.D. Ohio 2001); *In re McTyre Grading & Pipe, Inc.*, 180 B.R. 308 (Bankr. N.D. Ga. 1995); *In re Beeker Industries Corp.*, 58 B.R. 725 (Bankr. S.D.N.Y. 1986).

Debtor proposes to provide adequate protection to the Purported Secured Creditors by granting them Replacement Liens. The Replacement Liens will have the same validity and priority as the secured creditor's pre-petition lien had. The granting of replacement liens on cash collateral is a common method of providing adequate protection. By granting the Replacement Lien, Debtor will provide adequate protection to satisfy the requirement of the Bankruptcy Code. As such, its use of cash collateral should be authorized and approved. *In re Wrecclesham Grange, Inc.*, 221 B.R. 978, 981 (Bankr. N.D. Fla. 1997); and *In re Barkley AAA Investors, Ltd.*, 175 B.R. 755 (Bankr. D. Kan. 1994).

Authorization of the use of Cash Collateral is in the best interests of all creditors (including the Purported Secured Creditors).

***<u>NOTICE</u>***

***No examiner, or creditors' committee has been appointed in this Case. Notice of this***

***Motion has been given to the Office of the United States Trustee, and to any party that could claim an interest in Debtor's cash collateral. Because of the nature of the relief requested in this Motion, Debtor submits that no other notice need be given.***

**III. <u>CONCLUSION</u>**

WHEREFORE, Debtor respectfully requests the entry of an order granting the relief requested herein and such other relief as is just and proper.

DATED this 13th day of October, 2026.

Respectfully submitted,

**FENNEMORE CRAIG, P.C.**

By: */s/ Patrick F. Keery*
Patrick F. Keery (No. 030971)
*Proposed Attorneys for Debtors*