FENNEMORE

**FENNEMORE CRAIG, P.C.**
Patrick Keery (No. 030971)
2394 E. Camelback Rd., Suite 600
Phoenix, Arizona 85016-9077
Telephone: (602) 916-5000
Email: pkeery@fennemorelaw.com
*Proposed Attorneys for Debtor*

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| In re<br><br>**CORE LANDSCAPE, LLC,**<br><br>Debtor. | Chapter 11 Proceedings<br><br>[Subchapter V]<br><br>Case No. 2:26-bk-10380-PS<br><br>**DECLARATION OF AARON MERKOW IN SUPPORT OF DEBTOR'S FIRST DAY MOTIONS** |

I, **AARON MERKOW**, being first duly sworn, deposes and says under penalty of perjury:

**1.** I am a resident of the State of Arizona and reside in Maricopa County.

**2.** I am a Member of CORE LANDSCAPE, LLC, an Arizona limited liability company ("**Debtor**").

**3.** I submit this declaration (the "**Declaration**") in connection with the Debtor's voluntary petition (the "**Petition**") for relief under chapter 11 of title 11 of

the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "**Bankruptcy Code**") filed in the United States Bankruptcy Court for the District of Arizona (the "**Bankruptcy Court**") on the date hereof (the "**Petition Date**"). I further submit this Declaration to provide an overview of the Debtor and its chapter 11 case and to support the Debtor's applications and motions for "first day" relief.

**4.** I am familiar with the business and financial condition of the Debtor and, except as otherwise indicated herein, the facts set forth in this Declaration are based on my personal knowledge, my review of relevant documents, information provided to me by the Debtor's management, employees or professionals, or my opinion based upon my experience, knowledge, and information concerning the Debtor's operations and the industry in which they operate. Unless otherwise indicated, all financial information contained herein is presented on an estimated and unaudited basis. I am authorized to submit this Declaration on behalf of the Debtor. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

## I. SUMMARY OF THE DEBTOR'S AND BUSINESS OPERATIONS

### A. Nature of Debtor' Business.

**5.** Debtor owns and operates a business that provides landscaping services to its customers, including maintenance and installation of residential and commercial landscaping.

**B. Corporate Formation and Structure**

**6.** Debtor is a limited liability company formed under the laws of the State of Arizona. Debtor is authorized to transact business in Arizona. The Debtor was originally formed on or about August 15, 2016.

**7.** I am the manager of Debtor. Debtor operates from my residence located at 937 West Linger Lane, Phoenix, AZ 85021. Additionally, Debtor utilizes a lot at 502 East Cody Drive, Phoenix, AZ 85040 to store equipment, plant materials and supplies.

**8.** Debtor currently employs four (4) employees, plus myself. Additionally, Debtor uses approximately four (4) sub-contractors in its operations.

**9.** A copy of the Corporate Resolution authorizing the filing of this chapter 11 case was filed at Dkt. No. 4.

**10.** Pursuant to the Corporate Resolution, I am the Authorized Representative of Debtor for all things related to this bankruptcy case.

**C. Prepetition Indebtedness.**

**11.** In September 2023, Debtor borrowed $350,000 from Bayfirst National Bank ("**Bayfirst**") and Debtor subsequently borrowed an additional $150,000 from Bayfirst. The current balance of the loans with Bayfirst is approximately $285,715.47 and $128,904.40, respectively ("**Bayfirst Loans**"). In connection with the Bayfirst

Loans, Debtor granted Bayfirst a first-priority blanket lien against all of its assets, including cash collateral. I, personally guaranteed the Bayfirst Loans.

**12.** Additionally, Debtor has borrowed monies from other lenders charging high interest rates. The obligations (and excessive payments required to be paid to these lenders) ultimately deprived Debtor of the cash flow necessary to run its operations.

**13.** As set forth in the loan documents with Bayfirst, as security for the Bayfirst Loan, Debtor granted to Bayfirst a first-priority valid, perfected and enforceable security interest (the "**Prepetition Liens**") against all collateral previously pledged by the Debtor to secure repayment of the amounts owing to the SBA (the "**Prepetition Collateral**").

### D. Other Prepetition Obligations

**14.** There are some additional amounts due to trade creditors, other conventional lenders (Wells Fargo) and a merchant cash advance lender, Kapitus Servicing, LLC ("**MCA Lender**").

## II. CIRCUMSTANCES AND EVENTS LEADING TO BANKRUPTCY

### A. Circumstances Leading to Filing.

**15.** Over the past several years, and partially as a result of the COVID-19 pandemic, landscaping services have experienced declining revenues. The Debtor's

business also suffered, resulting in declining revenue without proportionate decreases in debt service, operational costs and other liabilities. External pressures resulting from the pandemic, including recent increases in wages and the cost of labor, shipping and supply inflation, decreased availability of labor, and inflation, coupled with mounting debt costs, have generally driven the Debtor's cash flow issues.

**16.** The Debtor's business has demonstrated an inability to grow annual volumes. These lower volumes resulted in smaller profit margins and thus greater sensitivity to the recent dramatic rise in labor, commodity prices, and inflation in overhead. As a result, Debtor has been unable to meet financial obligations in a timely manner.

**17.** As Debtor struggled with cash flow issues, Debtor sought and obtained more expensive loans to attempt to stabilize the business. Ultimately, Debtor is unable to service the debts it has incurred and maintain operations, thus requiring the instant bankruptcy.

## III. SUMMARY OF THE DEBTOR'S CHAPTER 11 REORGANIZATION.

**18.** The Debtor filed this chapter 11 case with the intention to reorganize its financial affairs and restructure its debts.

**19.** Debtor anticipates that all of the lenders junior to Bayfirst (who will itself be under-secured) will be determined to be unsecured creditors pursuant to Section 506 of the Bankruptcy Code.

**20.** Debtor anticipates timely filing a Plan of Reorganization which will provide a return to unsecured creditors which will be funded by post-petition net disposable income.

## IV. EVIDENTIARY SUPPORT FOR FIRST DAY MOTIONS

**21.** To enable the Debtor to operate effectively and minimize potential adverse effects during the Chapter 11 Case, the Debtor is requesting certain "first day" relief in various motions and applications filed with the Court concurrently herewith (collectively, the "**First Day Motions**"). This relief is critical to the Debtor's efforts to preserve and maximize value for the benefit of creditors and is intended to minimize the potential adverse effects that commencement of the chapter 11 case may have on the Debtor and its business operations.

**22.** I am familiar with the contents of each First Day Motion and the exhibits thereto, and believe the relief sought in each First Day Motion is: (a) necessary to preserve and maximize the value of the Debtor's estate; (b) essential to the successful reorganization of the Debtor; and (c) serves the best interests of the Debtor, its estate, its creditors and other parties in interest.

**23.** Additionally, and as set forth more fully below, I believe immediate entry of the relief requested in the First Day Motions is necessary and critical to the Debtor's financial restructuring, preserving the value of its business operations for the benefit of creditors, and achieving a successful reorganization of the Debtor's business affairs.

**A. <u>Cash Collateral Motion</u>**

**24.** On October 13, 2026, Debtor filed its *Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief* (the "**Cash Collateral Motion**"). The Debtor requests entry of interim and final orders (collectively, the "**Cash Collateral Orders**") (a) authorizing the Debtor to use "Cash Collateral," as defined in 11 U.S.C. § 363(a); (b) granting adequate protection to prepetition loan parties; and (c) granting related relief.

**25.** The Debtor acknowledges all of its cash, negotiable instruments, deposit accounts, or other cash equivalents in any form, including, without limitation, income, proceeds, products, revenues or profits of property or cash arising from the collection, sale, lease, disposition, use, or conversion to cash of any property, or fees, charges, accounts, or other payments, and such other forms of property as are

contemplated under 11 U.S.C. § 363, constitute cash collateral of Bayfirst governed by 11 U.S.C. § 363, whether Bayfirst's liens or security interests (including, without limitation, any replacement liens or security interests) existed on the Petition Date or arise thereafter, and whether such property that has been converted to cash existed as of the Petition Date or arose or was generated thereafter (collectively, the "**Cash Collateral**").

**26.** The Debtor lacks sufficient funds to support its continued operations during the chapter 11 case unless it is authorized to use Cash Collateral. Based on my work in developing the Debtor's budget, it will need access to Cash Collateral to ensure that it is able to continue operating its business during this chapter 11 case and pursue a value-maximizing restructuring process. Without use of the Cash Collateral, the Debtor's operations will be brought to an immediate halt, with damaging consequences for the Debtor and its bankruptcy estate and creditors. Without prompt access to Cash Collateral, the Debtor will be unable to satisfy payroll obligations, satisfy trade payables incurred in the ordinary course of business, or fund the administration of this chapter 11 case. This would cause immediate and irreparable harm to the value of the Debtor's estate to the detriment of all stakeholders.

**27.** Therefore, the Debtor proposes to use Cash Collateral on an interim basis until such time as the Court schedules a Final Hearing on the use of Cash Collateral. At the Final Hearing, the Debtor will seek relief to use Cash Collateral on a final basis during the term of the chapter 11 case.

**28.** I have assisted with the preparation of a cash flow forecast and budget for the use of Cash Collateral during the interim period from the Petition Date through November 6 Notice of Filing Corporation Resolution: (A) Designating Manager Aaron Merkow as "Authorized Person"; (B) Authorizing: (1) Commencement of Ch. 11 Bankruptcy Proceeding; and (2) Retention of Fennemore Craig, PC as Bankruptcy Counsel, 2026, which is attached to the Debtor's proposed interim cash collateral order (the "**Budget**")(attached to the Cash Collateral Motion as **Exhibit B1**). Based on my knowledge of the Debtor's business and value maximizing goals in this chapter 11 case, I believe that the Budget establishes that the Debtor will have adequate liquidity during the interim period. The Budget contains line items for cash anticipated to be received and disbursed during the time period covered by the Budget. I believe that the Budget includes all reasonable, necessary, and foreseeable expenses to be incurred in connection with the operation of the Debtor's business as a bridge while the Debtor restructures.

**29.** Immediate and irreparable harm would result if the relief requested in the Cash Collateral Motion is not granted on an interim basis pending the final hearing. The Debtor has a critical need for use of Cash Collateral to pay operating expenses associated with its business operations. The Debtor lacks sufficient available sources of working capital and financing to operate, reorganize or effectuate an orderly wind-down of its remaining business. Use of the Cash Collateral is necessary to the Debtor's ability to preserve and maintain going concern value of its businesses for the benefit of creditors and all parties in interest. Without the use of the Cash Collateral, the Debtor will have insufficient funding to permit, among other things, the orderly continuation of the operation of its businesses, maintain business relationships with vendors, suppliers and customers, make payroll, and satisfy other working capital needs and other costs associated with Debtor's business operations. Absent the relief requested herein, the Debtor's operations will be brought to an immediate halt, with damaging consequences for the Debtor and its bankruptcy estate and creditors. Accordingly, the use of Cash Collateral during the interim period is necessary to avoid immediate and irreparable harm to the Debtor's bankruptcy estate.

**B. <u>Motion for Joint Administration and Use of Consolidated Caption.</u>**

**30.** Contemporaneously with the commencement of Debtor's chapter 11 proceeding, I commenced an individual chapter 11 proceeding because I need relief from personal guaranties which they provided in connection with Debtor's business.

**31.** I believe Debtor's case should be jointly administered with my case because I own and operate the Debtor and many of Debtor's secured and unsecured debts and obligations are personally guaranteed. Entry of an order directing joint administration of these cases will obviate the need for duplicative notices, applications, and orders, and thereby save considerable time and expense for the Debtors' bankruptcy estates.

## CONCLUSION

**32.** I believe that the protection of the Bankruptcy Court will enable the Debtor to maximize the value of its assets for the benefit of the Debtor's estate and its creditors.

**33.** Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true correct.

**DATED** this 13th day of October, 2026.

**AARON MERKOW**

By: */s/ Aaron Merkow* (w/ Permission)
Aaron Merkow
*Member & Authorized Person*